IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

| | | |
|---|---|---|
| MD AUTO GROUP, LLC /dba/ I-90 NISSAN<br>5013 Detroit Road<br>Sheffield Village, OH 44054<br><br>    Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.<br>c/o Statutory Agent, Corporation Service Company<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221<br><br>    Defendant. | ))))))))))))))))) | CASE NO.<br><br>JUDGE<br><br><br>**COMPLAINT** |

1. Plaintiff, MD Auto Group, LLC /dba/ I-90 Nissan ("I-90" or "Plaintiff") is a limited liability company duly organized and existing under the laws of the State of Ohio and is a franchisee of Nissan North America, Inc. as defined by the Ohio Dealer Act, R.C. Chapter 4517 ("ODA").

2. I-90 is a new motor vehicle dealer licensed in accordance with the laws of the State of Ohio to sell new motor vehicles at its place of business at 5013 Detroit Road, Sheffield Village, Ohio.

3. Defendant Nissan North America, Inc. ("NNA") is a California corporation headquartered at 1 Nissan Way, Franklin, Tennessee 37067. NNA is a new motor vehicle manufacturer and engaged in business as that term is defined under the laws of the State of Ohio and the ODA.

**EXHIBIT A**

4. This Court has jurisdiction over the parties regarding the state law statutory ODA claims and Ohio common law causes of action pled herein.

5. Venue is proper in Lorain County, Ohio pursuant to Rule 3 of the Ohio Rules of Civil Procedure because it is a county in which the parties conducted activity giving rise to the claim for relief and a county in which all or part of the claims for relief arose.

## FACTS

6. The ODA is a remedial statute requiring a broad and liberal construction in order to promote the protection to existing dealerships from manufacturers. "R.C. Chapter 4517, which sets forth remedies and means of recovery for franchisees who have been mistreated by their franchisors...is remedial and is therefore to be liberally construed to promote said remedies and means.

7. R.C. § 4517.52(B) provides that "[e]ach franchisor shall compensate each of its franchisees for labor and parts used to fulfill warranty and recall obligations of repair and servicing at rates not less than the rates charged by the franchisee to its retail customers for warranty-like labor and parts for nonwarranty work."

8. In order to "establish rates of compensation for labor performed...for purposes of [R.C. § 4517.52]" the franchisee can submit "[o]ne hundred sequential nonwarranty service repair orders for warranty-like repairs that have been paid by a customer and closed by the time of submission." R.C. § 4517.52(B)(1)

9. Per R.C. § 4517.52(B)(2), "[t]he franchisee calculates its retail labor rate by determining the franchisee's total labor sales from the service repair orders submitted under division (B)(1) of this section and dividing that amount by the total number of labor hours that generated those sales."

2

10. On or about March 17, 2022, and in accordance with R.C. § 4517.52(B)(5), I-90 submitted "[o]ne hundred sequential nonwarranty service repair orders for warranty-like repairs that have been paid by a customer and closed by the time of submission" and notified NNA that it calculated its labor rate at $160.13 per hour ("Declared Labor Rate").

11. A franchisor, such as NNA, may only contest the Declared Labor Rate in accordance with R.C. § 4517.52(C)(1), which reads in full:

> A franchisor may contest the retail labor rate or retail parts markup percentage that was calculated by the franchisee under division (B) of this section within thirty days after receiving notice from the franchisee. If the franchisor seeks to contest the retail labor rate or retail parts markup percentage, the franchisor shall notify the franchisee that the franchisor believes the rate or markup percentage is materially inaccurate or substantially different than that of other similarly situated, same line-make new motor vehicle dealers in the vicinity, provide a full explanation of the reasons the franchisor disagrees with the rate or markup percentage, provide evidence substantiating the franchisor's position, and propose an adjustment of the contested rate or markup percentage. The franchisor shall not modify its notice to the franchisee or its grounds for contesting the rate or markup percentage after submitting a notice to the franchisee under division (C)(1) of this section.

12. On or about March 23, 2022, NNA responded to I-90 in writing purportedly contesting I-90's Declared Labor Rate (**Exhibit 1**). In its response, NNA did *not* notify I-90 that it believed the Declared Labor Rate was "materially inaccurate." Rather, NNA contested on grounds that the Declared Labor Rate was "substantially different than that of other similarly situated, same line-make new motor vehicle dealers in the vicinity."

13. Significantly, NNA's response did *not* "provide evidence substantiating the [NNA's] position."

14. NNA's response purported to compare I-90 to two unidentified Nissan dealers, "Dealer A" and "Dealer B". Without any evidence substantiating its claims, NNA alleges that Dealer A is located 33 miles from I-90 and its rate is $134.00; and Dealer B is located 42 miles from I-90 and its rate is $123.00.

15. NNA does not explain why it chose to compare I-90 to the unidentified "Dealer A" and "Dealer B", and not Nissan of North Olmsted, which is less than 8 miles from I-90 and the closest Nissan dealer, or Bedford Nissan, which is 27 miles from I-90.

16. NNA also does not explain why it uses sales, planning volumes, and rolling 12-month competitive registrations as comparison tools when comparing labor rates.

17. NNA's response further proposed an adjustment of I-90's Declared Labor Rate to $135 per hour.

18. On April 5, 2022, I-90 informed NNA in writing that it disagreed with NNA's response and requested that the disagreement be submitted to NNA's internal dispute resolution department in accordance with R.C. § 4517.52(C)(3).

19. Soon thereafter, NNA's outside counsel called I-90's counsel and informed that NNA does not have internal dispute resolution department or process as required by R.C. § 4517.52(C)(3), but suggested mediation as an alternative.

20. The parties unsuccessfully mediated this dispute on May 9, 2022.

## COUNT ONE

21. I-90 incorporates by reference the allegations contained in the preceding paragraphs above as if fully rewritten herein.

22. NNA violated R.C. § 4517.52(C)(1) by failing to provide I-90 with evidence substantiating the NNA's position contesting I-90's Declared Labor Rate.

23. As a direct and proximate result of NNA's violations of R.C. § 4517.52(C)(1), I-90 has sustained and will continue to sustain substantial damages in an amount to be proved at trial but well in excess of $25,000.

## COUNT TWO

24. I-90 incorporates by reference the allegations contained in the preceding paragraphs above as if fully rewritten herein.

25. A genuine controversy exists between I-90 and NNA regarding whether NNA complied with the requirements set forth at R.C. § 4517.52(C)(1) when purportedly contesting I-90's Declared Labor Rate of $160.13.

26. Specifically, I-90 contends that NNA, in its letter dated March 23, 2022 (Ex. 2), failed to provide the necessary "evidence substantiating the franchisor's position" as required by R.C. § 4517.52(C)(1).

27. I-90 further contends that NNA failed to provide an "internal dispute resolution process" as required by R.C. § 4517.52(C)(3).

28. Speedy relief from this Court is necessary to eliminate risk and uncertainty and establish the parties' legal rights. Absent a declaration as to whether NNA adequately contested I-90's Declared Labor Rate in accordance with R.C. § 4517.52(C)(1) and/or provided an "internal dispute resolution process" as required by R.C. § 4517.52(C)(3), NNA will continue to pay I-90 a labor rate on warranty obligations substantially less than what it is entitled. I-90 will suffer significant and potentially irreparable injury without such a declaration.

29. Should it be determined that NNA failed to comply with the requirements of R.C. § 4517.52(C)(1), then I-90's Declared Labor Rate of $160.13 will have taken effect by operation of law as of April 16, 2022, the 30th day following receipt of its submission, pursuant to R.C. § 4517.52(C)(2).

30. I-90 is entitled to a declaration that NNA failed to provide the necessary "evidence substantiating the franchisor's position" as required by R.C. § 4517.52(C)(1) and/or failed to

provide an "internal dispute resolution process" as required by R.C. § 4517.52(C)(3), and as a result, I-90's Declared Labor Rate of $160.13 is retroactively effective as of April 16, 2022.

## COUNT THREE

31. I-90 incorporates by reference the allegations contained in the preceding paragraphs above as if fully rewritten herein.

32. NNA contested I-90's Declared Labor Rate because it believed the rate is "**substantially different** than that of other **similarly situated**, same line-make new motor vehicle dealers **in the vicinity**."

33. The legislature does not define "substantially different." Nevertheless, NNA imposes its own, incorrect definition of the phrase "substantially different."

34. The legislature also does not define the term "similarly situated." Yet, it is clear from NNA's March 23, 2022 response letter (Ex. 1) that NNA defines "similarly situated" to mean dealers with sales, planning volumes, and rolling 12-month competitive registrations. NNA's proposed definition of "similarly situated," has no correlation to labor rates a dealer charges for service.

35. The legislature also does not define the phrase "in the vicinity." Merriam-Webster defines "vicinity" to mean "a surrounding area or district" or "the quality or state of being near."

36. NNA's proposed definition of "vicinity" means Nissan dealerships that are 33 and 42 miles away from I-90, all the while ignoring the Nissan dealership less than 8 miles away, is directly at odds with any definition of "vicinity."

37. A genuine controversy exists between I-90 and NNA regarding the meaning of the terms "substantially different," "similarly situated," and "in the vicinity" as used in R.C. § 4517.52(C)(1). These terms are undefined in Chapter 4517 of the Ohio Revised Code.

38. Speedy relief from this Court is necessary to eliminate risk and uncertainty and establish the parties' legal rights. Absent a declaration as to whether NNA adequately contested I-90's labor rate submission in accordance with R.C. § 4517.52(C)(1), NNA will continue to pay I-90 a labor rate on warranty obligations substantially less than what it is entitled. I-90 will suffer significant and potentially irreparable injury without such a declaration.

39. I-90 is entitled to a declaration that "Dealer A" and "Dealer B", as identified in NNA's March 23, 2022 letter response (Ex. 1), are not "similarly situated" to I-90 and are not "in the vicinity" of I-90 and, as a result, I-90's Declared Labor Rate of $160.13 is retroactively effective as of April 16, 2022.

## COUNT FOUR

40. I-90 incorporates by reference the allegations contained in the preceding paragraphs above as if fully rewritten herein.

41. I-90 submitted a Declared Labor Rate of $160.13. NNA improperly contested I-90's Declared Labor Rate and proposed an adjustment of $135.00 per hour. I-90 requested that the parties' disagreement be submitted and handled through NNA's dispute resolution process, as contemplated by R.C. § 4517.52(C)(3). However, NNA does not have an internal dispute process. Therefore, in the alternative, I-90 submits the parties' disagreement to this Court.

42. I-90 is entitled to an order directing NNA to pay I-90 a labor rate of $160.13 for warranty obligations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MD Auto Group, LLC /dba/ I-90 Nissan, prays for the following relief:

1. An order or declaratory judgment that NNA failed to provide the necessary "evidence substantiating the franchisor's position" when contesting I-90's Declared Labor Rate as required by R.C. § 4517.52(C)(1) and/or failed to provide an "internal dispute resolution process" as required by R.C. § 4517.52(C)(3), and as a result, I-90's Declared Labor Rate of $160.13 is retroactively effective as of April 16, 2022;

2. A declaratory judgment that "Dealer A" and "Dealer B", as identified in NNA's March 23, 2022 letter response (Ex. 1), are not "similarly situated" to I-90 and are not "in the vicinity" of I-90 and, as a result, I-90's Declared Labor Rate of $160.13 is retroactively effective as of April 16, 2022;

3. An order or declaratory judgment that I-90 satisfied the requirements set forth at R.C. § 4517.52(B) and is therefore entitled to its Declared Labor Rate of $160.13 retroactively effective as of April 16, 2022;

4. Awarding I-90 any further relief the Court deems just and appropriate, including, but not limited to, attorneys' fees and costs.

Respectfully submitted,

*/s/ Matthew C. Miller*
**Robert A. Poklar (0015685)**
*RPoklar@westonhurd.com*
**Matthew C. Miller (0084977)**
*MMiller@westonhurd.com*
**Gary W. Johnson (0017482)**
*GJohnson@westonhurd.com*
**Weston Hurd LLP**
1300 East 9th Street, Suite 1400
Cleveland, OH 44114-1862
216-241-6602 / 216-621-8369

*Counsel for MD Auto Group, LLC /dba/ I-90 Nissan*

# NISSAN
## GROUP OF THE AMERICAS

March 23, 2022

Diehl Belza
Executive Manager
I-90 Nissan (5427)
5013 Detroit Rd.
Sheffield Village, OH 44054

Dear Mr. Belza:

This letter is in response to your request to increase your warranty labor rate from $123.15 to $160.13. We have carefully reviewed your Labor Rate submission and the competitive market.

Recently, March 5, 2022, NNA received your first warranty labor rate submission and approved the rate of $138.00 based upon the nearest Nissan competitive market average of $131.65. On March 17, 2022, NNA received a second submission in compliance to Ohio statute. NNA reached out to confirm the second submission and explain it will eliminate all offers previously set and revert the rate back to the old rate of $123.15. Diehl Belza agreed to move on with the second submission via email confirmation received on March 23, 2022.

Ohio Rev. Code Ann. § 4517.52 (C)(1) includes a reasonableness caveat in relevant part:

> (C)(1) "If the franchisor seeks to contest the retail labor rate or retail parts markup percentage, the franchisor shall notify the franchisee that the franchisor believes the rate or markup percentage is materially inaccurate or substantially different than that of other similarly situated, same line-make new motor vehicle dealers in the vicinity."

NNA determined the requested rate of $160.13 to be substantially different than that of other similarly situated, same line-make dealers in the vicinity, averaging $128.50. Specifically, your request is $31.63 or about 25% higher. To further substantiate the unreasonableness of your request, this chart identifies the labor charges NNA pays for similar repairs by other similarly situated Nissan dealers with sales, planning volumes, and rolling 12-month competitive registrations comparable to I-90 Nissan:

Nissan North America, Inc.
One Nissan Way, Franklin, TN 37067, U.S.A


EXHIBIT
A

| Dlr Name | Rate | Dlr Sales | PV | CPTV Regis. | Miles from Dlr |
|---|---|---|---|---|---|
| I-90 Nissan | $ 123.15 | 797 | 1126 | 11596 | 0 |
| Dealer A | $ 134.00 | 827 | 1394 | 14577 | 33 |
| Dealer B | $ 123.00 | 890 | 1051 | 11708 | 42 |
| avg. | $ 128.50 | | | | |

At this time, NNA will approve an increase in your warranty labor rate to $135.00 effective March 24, 2022. NNA determined this rate to be more than reasonable in light of the other similarly situated, same line-make new motor vehicle dealers in the vicinity of your dealership. Specifically, this rate is $6.50 or about 5% higher than the average rate of other similarly situated, same line-make new motor vehicle dealers in the vicinity of your dealership. NNA intentions are to place all dealers within a reasonable warranty rate.

If you have questions, please contact me at 615.725.0321 or LaborRateReview@Nissan-USA.com.

Regards,

Kenneth Miller
Analyst, Warranty Claims

2

COURT OF COMMON PLEAS, GENERAL DIVISION
LORAIN COUNTY, OHIO
TOM ORLANDO, CLERK

| | | |
|---|---|---|
| MD AUTO GROUP, LLC | ) | CASE NO. _____ |
| | ) | |
| Plaintiff(s), | ) | |
| v. | ) | JUDGE _____ |
| | ) | |
| NISSAN NORTH AMERICA, INC. | ) | |
| | ) | INSTRUCTIONS TO CLERK FOR SERVICE |
| Defendant(s). | ) | *(Print legibly or type; additional security* |
| | ) | *for costs may be required)* |

_____ Do NOT serve party listed below – Civ.R. 4.7 waiver of service requested

**You are instructed to make service of the following pleading(s):    *PLEASE PROVIDE SERVICE COPY*** 

☒ summons on complaint or petition          ◯ notice of foreign judgment

◯ summons on answer and cross-claim          ◯ notice of cognovit judgment

◯ summons on motion for revivor          ◯ other (describe more fully below):

_____

**Via the method indicated:**

☒ certified mail, return receipt requested

◯ ordinary U.S. mail

◯ service by Sheriff of _____ County (select one):  _____ personal  _____ residential

◯ service by process server (select one):  _____ personal  _____ residential

  NAME OF PROCESS SERVER: _____

**Upon party (one party per form; attach sheet for more than two addresses for a party):**

Name:  Nissan North America, Inc., c/o Statutory Agent, Corporation Service Company

Address #1:  3366 Riverside Drive, Suite 103

City – State – ZIP code:  Upper Arlington, OH 43221

Address #2: _____

City – State – ZIP code: _____

**REQUESTED BY:**

Party or attorney name:  *Matthew C. Miller, Esq.*

Print Name:  Matthew C. Miller, Esq.          Attorney for:  Plaintiff

Atty. Registr. #:  0084977          Telephone:  (216) 687-3236

Lorain County Justice Center • 225 Court Street • First Floor • Elyria, Ohio 44035
**WAIVERS OF SERVICE ARE NOT PERMITTED FOR CIVIL PROTECTION ORDERS ISSUED PURSUANT TO CIV.R. 65.1.**